# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

**06-CV-3136**
**(JS)**

JESSE FRIEDMAN,

*Petitioner*,

*-against-*

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

Additional Respondent.

RESPONDENTS' NOTICE OF MOTION TO DISMISS
HABEAS CORPUS PETITION, AFFIDAVIT IN
SUPPORT, AND MEMORANDUM OF LAW

KATHLEEN M. RICE
District Attorney, Nassau County
Attorney for Respondents
262 Old Country Road
Mineola, NY 11501
(516) 571-3800

Tammy J. Smiley
Judith R. Sternberg
Assistant District Attorneys
*Of Counsel*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

JESSE FRIEDMAN,                                    NOTICE OF MOTION TO
                                                   DISMISS PETITION FOR A
                        Petitioner,                WRIT OF HABEAS CORPUS

        - against -

JOE REHAL, Parole Officer, and                     06 CV 3136(JS)
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

                Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

                Additional Respondent.

--------------------------------------x


        PLEASE TAKE NOTICE THAT, upon the affidavit of Judith R.

Sternberg, at a time and date to be determined by the Court,

respondents will move, pursuant to 28 U.S.C. § 2244(d), for an

order dismissing the above-captioned petition for a writ of habeas

corpus on the ground that the petition is untimely.

Dated:      Mineola, New York
            September 11, 2006

                                    Respectfully submitted

                                    Kathleen Rice
                                    District Attorney
                                    Nassau County
                                    262 Old Country Road
                                    Mineola, New York 11510

                            By:     Judith R. Sternberg (JS 2644)
                                    Assistant District Attorney

To:  Clerk of the United States District Court
     Eastern District of New York
     1034 Federal Plaza
     Central Islip, New York 11722

     Ronald Kuby, Esq.
     Attorney for Petitioner
     119 West 23rd Street, Suite 900
     New York, New York 10011

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,                          AFFIDAVIT IN SUPPORT
                                         OF MOTION TO DISMISS
                 Petitioner,
                                         06 CV 3136(JS)
            -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

            Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

            Additional Respondent.

---------------------------------------X

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NASSAU  )
```

JUDITH R. STERNBERG, being duly sworn, deposes and states:

1.   I am an assistant district attorney, of counsel to Kathleen Rice, District Attorney of Nassau County, who is representing respondents.  I am admitted to practice law before this Court.

2.   This affidavit is submitted in support of respondents' application to dismiss as untimely petitioner's application for a writ of habeas corpus.  The statements made herein are based on information and belief, the source of which is the records of the District Attorney of Nassau County.

3.    In 1987 and 1988, three indictments were filed, charging petitioner and two accomplices -- petitioner's father (Arnold Friedman) and a neighbor (Ross G.) -- with having committed, over the course of a three-year period, multiple acts of sodomy, sexual abuse, and other related crimes against children, all of whom, at the time of the crimes, were enrolled in computer classes taught by petitioner's father in the basement of the Friedmans' home.

4.    Arnold Friedman (petitioner's father) was a codefendant in two of these indictments (nos. 67104 and 67430).  Arnold Friedman pleaded guilty to multiple counts of sodomy and related charges and, on May 13, 1988, was sentenced, by the County Court, Nassau County, to a term of imprisonment of ten to thirty years. That term was ordered to run concurrently with a ten-year term of imprisonment imposed on March 28, 1988, by the United States District Court, Eastern District, pursuant to Arnold Friedman's plea of guilty in that Court to charges of using the mails to send and receive child pornography.

5.    Ross G. was a codefendant under indictment 69783.  On March 22, 1989, after cooperating with the prosecution and agreeing to testify against petitioner, Ross G. pleaded guilty to three counts of sodomy in the first degree and one count of use of a child in a sexual performance.  On May 3, 1989, he was sentenced to four concurrent indeterminate terms of two to six

2

years' imprisonment.  On July 18, 1990, the Supreme Court of the State of New York, Appellate Division, Second Department, modified the judgment of conviction by adjudicating him a youthful offender and reducing his sentence to a term of six months' incarceration and five years' probation.  People v. Ross G., 163 A.D.2d 529 (2d Dept. 1990).  (Because Ross G. was adjudicated a youthful offender, his full name is not used in respondents' papers.)

6.  On December 20, 1988, in the County Court, Nassau County, petitioner pleaded guilty to sodomy in the first degree (seventeen counts), use of a child in a sexual performance (one count), sexual abuse in the first degree (four counts), attempted sexual abuse in the first degree (one count), and endangering the welfare of a child (two counts), in satisfaction of the three indictments filed against him.  (Petitioner's in-court admission on December 20, 1988, would not be the last time he would publicly confess his guilt of the charges.  After he was sentenced, petitioner agreed to be interviewed by Geraldo Rivera, and that interview was broadcast on Rivera's television program in February 1989.  Throughout the interview, petitioner solemnly told Rivera that he fondled children who were students in the computer classes run by his father, that he engaged in oral and anal sexual conduct with the children, and that videotapes and hundreds of

3

photographs were taken of the children whom he and his accomplices abused.)

7.   On January 24, 1989, petitioner was sentenced to concurrent terms of imprisonment, the longest of which was six to eighteen years (Boklan, J., at plea and sentence).

8.   Petitioner did not perfect an appeal from the judgment. (Had petitioner perfected an appeal from the judgment, the plea and sentence minutes would presumably have been transcribed shortly after the sentencing.  It is no longer possible to obtain transcriptions of those proceedings because the stenographer who took the minutes has died, and his records cannot be located.)

9.   Petitioner was released from prison on December 7, 2001, and was subsequently classified a level III offender under the Sex Offender Registration Act (New York Correction Law article 6-C).

10.   On January 7, 2004, fifteen years after he entered his guilty plea, petitioner filed a post-judgment motion pursuant to New York Criminal Procedure Law § 440.10(1)(h).   Petitioner alleged that, prior to pleading guilty, he was entitled to disclosure of certain information pursuant to Brady v. Maryland, 373 U.S. 83 (1963), that the prosecution failed to disclose the information to him, and that that failure required vacatur of the judgment.   Specifically, petitioner claimed that police investigators used improper tactics when questioning potential

4

witnesses in this case, that some complainants initially denied that they had been victims of abuse or that they had witnessed any criminal behavior, and that one complainant underwent hypnosis before claiming that he had been abused.   This, according to petitioner, rendered the complainants' statements unreliable and subject to impeachment at trial.   He argued that he should have been informed that improper interviewing methods were used, that he was not aware of this information when he pleaded guilty, and that disclosure to him of this information would have led him to go to trial, rather than to take advantage of the negotiated plea agreement.

11.   The People opposed vacatur of the judgment.   Among other things, the Nassau County District Attorney (hereinafter "District Attorney") argued that it was demonstrably true that, at the time petitioner pleaded guilty, he was well-aware of the allegations he raised fifteen years later in his post-judgment motion. Specifically, the People argued that, according to petitioner's own papers, he and his counsel were aware, prior to entry of petitioner's plea, that the mother of one of Arnold Friedman's computer students had secretly taped the police while they interviewed her son.   Peter Panero, the attorney representing petitioner at the time of his plea, claimed to have seen that tape prior to the entry of the plea, and, according to Panero, the tape

was evidence of improper interrogation techniques.   Thus, the District Attorney argued in response to petitioner's post-judgment motion, at the time petitioner entered his guilty plea, the defense was, by its own claim, aware of its current allegation of over-reaching police interrogation tactics.

12.   In addition, the District Attorney noted that, in 1990, petitioner and his father wrote an "open letter" which they sent to the District Attorney, the police, the County Court judge who accepted the pleas of petitioner and his father, and parents of the victims (Newsday, May 4, 1990, pp. 6, 31).   The letter made the same allegations concerning improper police interviewing that petitioner made in his post-judgment motion  - allegations of which petitioner contended he was unaware at the time he took his plea.  (Petitioner's "open letter" is separately filed as exhibit 1.)

13.   The District Attorney argued that further proof of petitioner's knowledge of these allegations was provided by petitioner's own web site, where petitioner wrote that, in 1988, while preparing for trial, he knew of the existence of computer students who had told the police that "nothing happened."  (A copy of this posting is separately filed as exhibit 2.)

14.   In a decision dated January 6, 2006, the County Court, Nassau County (LaPera, J.), summarily denied petitioner's motion

to vacate the judgment of conviction.  The court found that, inter alia, "the [petitioner] did, in fact, have knowledge of the interview techniques used by the police" (County Court decision at 3-4).  (A copy of the County Court's decision is annexed to the petition.)

15.   Petitioner sought permission to appeal to the Appellate Division from the County Court's order.   That application was denied on March 10, 2006.

16.   Petitioner now seeks a writ of habeas corpus.

17.   Respondents ask the Court to dismiss the petition on the ground that it is untimely.

18.   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petition for a writ of habeas corpus be filed within one year from the date on which the petitioner's conviction became final.   Where, however, a conviction became final before the effective date of the AEDPA, a petitioner has a one-year grace period from April 24, 1996 (the date on which the AEDPA became effective) until April 24, 1997, within which to file.   See Ross v. Artuz, 150 F.3d 97, 103 (2d Cir. 1998).  Petitioner's conviction became final on February 24, 1989, one month after he was sentenced.  He therefore had until April 24, 1997, one year after the effective date of the AEDPA,

7

within which to file a timely petition for habeas corpus.  That time is long gone.

19.  Petitioner contends that the one-year statute of limitations began anew in July 2003 because "the factual predicates" of his claim were unknown to him until then. Petitioner's claim of newly discovered evidence is refuted by the factual finding of the County Court, Nassau County, and is demonstrably untrue.

20.  Separately filed as exhibits are:

exh. 1   a document entitled "AN OPEN LETTER FROM ARNOLD FRIEDMAN TO THE GREAT NECK COMMUNITY, THE FACULTY AND ALUMNI OF BAYSIDE HIGH SCHOOL, AND THE FACULTY AND STUDENTS OF WOODMERE ACADEMY."  The letter, bearing the signatures of both petitioner and his father, was distributed in April or May 1990, about fifteen months after petitioner was sentenced; and

exh. 2   posting from petitioner's web site.

WHEREFORE, on the basis of this affidavit, the attached memorandum of law, and the separately filed exhibits, the petition for a writ of habeas corpus should be dismissed as time-barred.

_____
Judith R. Sternberg (JS 2644)
Assistant District Attorney
Nassau County District Attorney's Office
262 Old Country Road
Mineola, New York 11501
516-571-3271

Sworn to before me this
11th day of September, 2006

_____

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,

          Petitioner,

   -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the        06 CV 3136(JS)
New York State Division of Parole,

         Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

         Additional Respondent.

---------------------------------------X


<u>RESPONDENTS' MEMORANDUM OF LAW</u>


    This memorandum of law is filed in support of respondents' motion, pursuant to 28 U.S.C. § 2244(d), to dismiss, as untimely, petitioner's application for a writ of habeas corpus.

2

<u>A R G U M E N T</u>

<u>THE PETITION IS UNTIMELY AND SHOULD BE DISMISSED</u>.


The Antiterrorism and Effective Death Penalty Act provides time limits within which a petition for habeas corpus may be filed.  Generally, a petition must be filed within one year of the date on which the judgment against the petitioner became final. 28 U.S.C. § 2244(d)(1)(A).  If, however, a petitioner's conviction became final prior to the effective date of the AEDPA, the petition will be deemed timely if it is filed by April 24, 1997 (one year from the effective date of the AEDPA).  <u>Smith v. McGinnis</u>, 208 F.3d 13, 15 (2d Cir. 2000); <u>Ross v. Artuz</u>, 150 F.3d 97, 98 (2d Cir. 1998).  Jesse Friedman is within that category of petitioners.


On December 20, 1988, petitioner pleaded guilty to multiple counts of sodomy and related offenses.  On January 24, 1989, he was sentenced for those crimes.  Petitioner did not perfect an appeal.  His conviction therefore became final on February 24, 1989, the date on which his time for perfecting an appeal expired. <u>See</u> New York Criminal Procedure Law ("C.P.L.") § 460.10(6); <u>M.P.(99-A-3145) v. Perlman</u>, 269 F.Supp.2d 36, 38 (E.D.N.Y. 2003).

3

Because that date preceded the effective date of the AEDPA, petitioner had until April 24, 1997, to file a timely petition for habeas corpus.  It is now 2006.  Petitioner's time for filing an application for habeas corpus is long gone.

Nonetheless, petitioner contends that his application is timely.  He states that the one-year limitation for filing should be calculated from July 1, 2003, the date on which he claims he first "began to gain access to the factual predicate" for his argument (petition at para. 13 and p. 6).[1]  Presumably, petitioner's position is that his claim rests on newly discovered evidence and that he is entitled to rely on 28 U.S.C. § 2244(d)(1)(D), which provides that the one-year period within which a petition shall be filed shall run anew from "the date on which the factual predicate of the claim . . . presented could have been discovered through the exercise of due diligence."  Petitioner's claim does not establish newly discovered evidence and he is not, therefore, entitled to the benefit of that statutory provision.

---

[1]  The petition (para. 13) refers to July 2006 as the date on which petitioner first learned of the factual predicate for his claim.  I have confirmed with petitioner's counsel that this is simply a typographical error and should read "July 2003."

4

Petitioner's claim is that he was denied material to which he was entitled pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Specifically, he claims that when questioning the computer students who later became complainants against him and his father, the police "used interrogation methods known to elicit false accusations from children" (petition at p. 6). According to petitioner, this would have been information favorable to the defense, and the failure to disclose this information constituted a <u>Brady</u> violation. Petitioner further states that he first learned this information -- the "factual predicates" of his claim -- in July 2003 (petition at para. 6 and p. 6). Thus, accounting for the time during which petitioner's post-judgment proceedings were pending in the state courts, petitioner calculates that his petition was timely filed. Petitioner fails at the outset, however, to establish that his "evidence" was newly discovered. Indeed, as the state court found, petitioner was well aware of his current allegations at the time he entered his plea of guilty.

Annexed to petitioner's application is an affirmation from Peter Panero, the attorney who represented petitioner when he pleaded guilty. Panero states that, prior to petitioner's guilty plea, he learned that one of the students in Arnold Friedman's computer class had been interviewed by the police, and that the

5

student's mother had secretly videotaped the interview.  Panero further states that he went to the student's home, where he was permitted to view and transcribe the interview.  That transcription, according to petitioner, establishes his newly discovered <u>Brady</u> claim.  But this is not newly discovered. Indeed, according to Panero, he not only knew about and viewed the tape before petitioner pleaded guilty, but it was either petitioner or his father who first made him aware of the tape (Panero affirmation at para. 8).  In other words, prior to the entry of petitioner's guilty plea, someone sympathetic to petitioner and his father advised them that there was material which would be of interest to them.  They, in turn, advised their counsel, who was given access to that material.  Thus, the defense was on notice as to this current allegation of over-reaching police interrogation well before petitioner entered his guilty plea, and many years before he instituted state post-judgment proceedings based on this claim.[2]

---

[2]Citing the affirmation of  Assistant District Attorney Joseph Onorato, petitioner states that "[t]he [p]rosecution denies the very existence of this videotape" (petitioner's memorandum of law at 21).  A.D.A. Onorato never denied the existence of the tape.  He simply said that he had never seen any such tape and had no reason to believe that it existed (affirmation of J. Onorato at para. 5).  (A.D.A. Onorato's affirmation is annexed to the petition.)

6

Moreover, the defense was aware of substantially more than this tape and what it purportedly disclosed.  According to the petition, "the exculpatory evidence that underlies" this application was uncovered "accidentally" by the makers of a movie entitled "Capturing the Friedmans" (petition at pp. 25-26), and petitioner first learned of this evidence when he viewed the film and saw "the underlying documents and footage" in 2003 (petition at p. 6).  However, in 1990 -- a decade before work began on the movie which petitioner claims unearthed the alleged <u>Brady</u> violations, and not long after petitioner's guilty plea -- petitioner and his father signed an "open letter" which was sent to the District Attorney's office, the police, the judge who accepted the pleas of petitioner and his father, and parents of the victims (Newsday, May 4, 1990, pp. 6, 31).  This 1990 letter made the same allegations concerning improper police interviewing that petitioner now makes in his post-judgment motion -- allegations of which petitioner contends he was unaware until he saw the movie.

According to the Friedmans' "open letter," police "blatantly lied to the first parent interviewed," saying that a student in the child's class had reported being sodomized by the elder Friedman.  Thereafter, according to the letter, parents allowed

7

the police to interview their children, alone, "for hours at a
time" ("open letter" [exh. 1] at 3).  The letter states that the
police "coerced" the children and told them that they "must say
what we tell you to say."  It further charges that a child was
"questioned repeatedly by police officers" for six hours "until
finally he agrees to do what is asked of him, if only to stop the
grilling," and that, even when children denied any abuse, the
police told the parents that they believed the children had been
victimized (<u>id</u>.).  According to the letter, the police "coerced"
the children, and petitioner even <u>quotes</u> statements he claims the
police made to the children in the course of attempting to obtain
incriminating evidence (<u>id</u>.).  Indeed, petitioner and his father
state in this "open letter" that they personally spoke to the
children and "were told by several youngsters" about the police
"grilling" they underwent (<u>id</u>.).  This "open letter" was nothing
short of an outline for the post-judgment motion petitioner filed
in the state court, some fourteen years later, as well as the
petition now before this Court.  Indeed, every allegation of
police impropriety now raised in the petition was alleged in 1990.


Should there be any doubt that this letter accurately
reflects petitioner's knowledge, as well as his father's, prior
to the entry of his guilty plea, petitioner removed that doubt in

a posting on his internet web site.  At www.freejesse.com, under the caption "Some Documents About The Case," petitioner wrote: "In 1988 while preparing for trial we begged our lawyers to contact the former computer students and find those who would be brave enough to testify on our behalf.  The police were accusing us of situations where out of a class of ten students one child said he was repeatedly molested, while the other nine in that same class were telling the police that they never saw anything happen."[3] Surely, if the movie makers were able to interview the former students, the defense team could have done so just as easily. Indeed, it appears that they did.  Petitioner states in his affidavit that he "couldn't find any students who were in the classes, and who told the police that nothing happened and didn't press charges, who would agree to come to court and testify on [his] behalf" (Friedman affidavit [annexed to petition] at para. 33)(emphasis added).  Thus, clearly, petitioner was aware of the existence of these students, and their identities, and he or his representatives had spoken to them.


   In other words, not only should petitioner have known of the likelihood of these alleged interviewing improprieties after he

_____

   [3]  A copy of this posting is provided to the Court (exh. 2). It has since been changed, and petitioner's web site no longer contains the language quoted here.

9

was informed of the tape of the interview with the computer
student, he actually and specifically did know, according to the
"open letter" he signed.  Thus, the state court's finding that
"the [petitioner] did, in fact, have knowledge of the interview
techniques used by the police" was fully supported by the record.
That ruling is "presumed to be correct," and petitioner does not
even attempt to satisfy his burden of rebutting the presumption
of correctness by "clear and convincing evidence" (28 U.S.C.
2254[e][1]).  He does not discuss his "open letter," and he
certainly does not explain how he could not have known in 2004
(when he filed his post-judgment motion) that which he knew before
he pleaded guilty (when he alerted his attorney to the tape of the
interview with the computer student) or in 1990 (when he wrote his
"open letter").

   Of course, it is not unlikely that, in 2003, when petitioner
viewed "Capturing the Friedmans" and was assisted by the producer
of that film, the task of developing evidence to support his claim
of police impropriety became considerably easier than it would
have been earlier.  That, however, does not excuse petitioner's
failure to file a timely motion when, as he himself has
established, he was aware, at the time of his guilty plea, of the
purported improper interviewing tactics by the police, and the

10

specific pool of witnesses who could potentially support his claim. The AEDPA provides that the one-year time period within which to file a petition for habeas corpus runs from the date on which the factual predicate of the claim was discovered -- not from the date on which a petitioner finally "gathers every possible scrap of evidence that might, by negative implication, support his claim" (Flanagan v. Johnson, 154 F.3d 196, 199 [5th Cir. 1998]).  See Youngblood v. Greiner, 1998 WL 720681 at *4 n.4 (S.D.N.Y. 1998)(28 U.S.C. 2244[d][1][D] "runs from the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim"); Tineo v. Strack, 1998 WL 938950 (E.D.N.Y. 1998)(28 U.S.C. 2244[d][1][D] ran from date petitioner knew videotape was not accurately translated, not from the date he sought a new transcription).  Petitioner here claims that he was unaware of the factual predicate for his claim until 2003, fifteen years after his judgment of conviction became final.  But that is refuted by petitioner's own words and actions, and he fails to offer any excuse for what is clearly inexcusable delay. His petition should be dismissed on the ground that it is untimely.

11

C O N C L U S I O N


THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE DISMISSED.


Dated:      Mineola, New York
            September 11, 2006




                              Respectfully submitted,

                              Kathleen M. Rice
                              District Attorney, Nassau County
                              262 Old Country Road
                              Mineola, New York 11501


                     By: _____
                              Judith R. Sternberg (JS 2644)




Tammy J. Smiley
Judith R. Sternberg
    Assistant District Attorneys
       of Counsel

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,                                06 CV 3136(JS)

                    Petitioner,

        -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

                    Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

                    Additional Respondent.

---------------------------------------X
```

## Certificate of Service

I hereby certify that, on September 11, 2006, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon:

```
            Ronald Kuby, Esq.
            Attorney for Petitioner
            119 West 23rd Street, Suite 900
            New York, NY 1001


            KATHLEEN M. RICE
            District Attorney, Nassau County
            Attorney for Respondents
            262 Old Country Road
            Mineola, New York 11501
            (516) 571-3800

    By:  Judith R. Sternberg (JS 2644)
```

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,                              06 CV 3136(JS)

                    Petitioner,

        -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

                    Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

                    Additional Respondent.

---------------------------------------X
```

### Notice Regarding the Filing of Exhibits in Paper Form

    Exhibits in support of Respondent's Motion to Dismiss in opposition to the above-captioned habeas corpus petition, which was filed electronically on September 11, 2006, are being filed in hard copy.

```
                         KATHLEEN M. RICE
                         District Attorney, Nassau County
                         Attorney for Respondents
                         262 Old Country Road
                         Mineola, New York 11501
                         (516) 571-3800

                 By:  Judith R. Sternberg (JS 2644)
```

Date: September 11, 2006