

**KATHLEEN M. RICE**
DISTRICT ATTORNEY

262 Old Country Road
Mineola, New York 11501
Telephone (516) 571-3800

## OFFICE OF THE DISTRICT ATTORNEY
### Nassau County

August 21, 2007

Honorable Joanna Seybert
United States District Court
Alfonse M. D'Amato Federal Building
100 Federal Plaza, P.O. Box 9014
Central Islip, New York 11722-9014

Re: <u>Jesse Friedman v. Rehal, et al.</u>
06-CV-3136

Dear Judge Seybert:

On August 14, 2007, subsequent to the Court's dismissal of two of petitioner's claims on the ground that they were untimely, respondent requested time to file a response to petitioner's one remaining claim. Petitioner opposed that request, and, to date, the Court has not ruled upon it.

Enclosed herewith are the papers respondent would have the Court accept. Simply put, respondent argues that it is discernible from the record that the petition here was filed more than one year from the date on which petitioner became aware of the factual basis of his claim and this filing was, therefore, outside the statute of limitations. Moreover, even if all of the factual allegations in the petition were deemed to be true, the Supreme Court has made clear that the petitioner was not entitled to the so-called "<u>Brady</u> material" in issue prior to the entry of his guilty plea. Thus, in no event is a hearing necessary, because, even in accord with petitioner's own factual allegations, he is entitled to no relief.

Honorable Joanna Seybert
Page 2
August 21, 2007


    Respondent therefore asks the Court to accept the enclosed papers and to hold in abeyance, and not yet require an answer to, petitioner's motion to commence discovery.  Should the Court accept either of respondent's arguments, petitioner's motion would obviously be rendered moot.

                    Very truly yours,



                    Judith R. Sternberg
                    Assistant District Attorney
                    Appeals Bureau
                    516-571-3271

cc.: David Pressman, Esq.
     The Law Office of Ronald L. Kuby
     119 West 23 Street, Suite 900
     New York, New York 10011

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

06-CV-3136 (JS)

JESSE FRIEDMAN,

                     *Petitioner,*

       *-against-*

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

                Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

           Additional Respondent.

## RESPONDENTS' AFFIDAVIT AND
## MEMORANDUM OF LAW IN OPPOSITION
## TO HABEAS CORPUS PETITION

                            **KATHLEEN M. RICE**
                            *District Attorney,*
                              *Nassau County*
                            *Attorney for Respondents*
                            262 Old Country Road
                            Mineola, NY 11501
                            (516) 571-3800

Peter A. Weinstein
Judith R. Sternberg
  Assistant District Attorneys
    of Counsel

### TABLE OF CONTENTS

| | Page |
|---|---|
| Affidavit in Opposition . . . . . . . . . . . . . . . . | 1-8 |

Memorandum of Law

| Introduction . . . . . . . . . . . . . . . . . . . . | 1 |

Point I
    The Petition Is Untimely and Should
    Be Dismissed . . . . . . . . . . . . . . . . . . | 3 |

Point II
    As Established by the Supreme Court,
    Impeachment Evidence Need Not Be
    Disclosed to a Defendant Prior to His
    Entry of a Guilty Plea; the State
    Court's Ruling Was Not Contrary To,
    or Based on an Unreasonable Application
    Of, this Clearly Established Federal Law . . . | 12 |

| Conclusion . . . . . . . . . . . . . . . . . . . . . | 22 |

Notice Regarding the Filing of Exhibits in Paper Form

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,                                    AFFIDAVIT IN OPPOSITION
                                                   TO A PETITION FOR A WRIT
            Petitioner,                            OF HABEAS CORPUS

            -against-
                                                   06-CV-3136(JS)
JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

            Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

            Additional Respondent.

---------------------------------------X

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NASSAU  )

      JUDITH R. STERNBERG, being duly sworn, deposes and states:

      1.   I am an assistant district attorney, of counsel to Kathleen

M. Rice, District Attorney of Nassau County, who is representing

respondents.  I am admitted to practice law before this Court.

      2.   This affidavit is submitted in opposition to petitioner's

application for a writ of habeas corpus.  The statements herein are

based on information and belief, the source of which is the records

of the District Attorney of Nassau County.

1

3.   In 1987 and 1988, three indictments were filed, charging petitioner, his father (Arnold Friedman) and a neighbor (Ross G.) with multiple acts of sodomy, sexual abuse, and other related crimes against children, all of whom, at the time of the crimes, were enrolled in computer classes taught by petitioner's father in the basement of the Friedmans' home.  (Because Ross G. was adjudicated a youthful offender, his full name is not used in respondents' papers.)

4.   Arnold Friedman (petitioner's father) was a codefendant in two of these indictments (nos. 67104 and 67430).  Arnold Friedman pleaded guilty to multiple counts of sodomy and related charges and, on May 13, 1988, was sentenced, by the County Court, Nassau County, to a term of imprisonment of ten to thirty years.  That term was ordered to run concurrently with a ten-year term of imprisonment imposed on March 28, 1988, by the United States District Court, Eastern District, pursuant to Arnold Friedman's plea of guilty to charges of using the mails to send and receive child pornography.

5.   Ross G. was a codefendant under indictment 69783.  On March 22, 1989, after cooperating with the prosecution and agreeing to testify against petitioner, Ross G. pleaded guilty to three counts of sodomy in the first degree and one count of use of a child in a sexual performance.  On May 3, 1989, he was sentenced to four concurrent indeterminate terms of two to six years' imprisonment.

2

On appeal, Ross G. was adjudicated a youthful offender and his term of imprisonment was reduced.  <u>People v. Ross G.</u>, 163 A.D.2d 529 (2d Dept. 1990).

6.   On December 20, 1988, in the County Court, Nassau County, petitioner pleaded guilty to sodomy in the first degree (seventeen counts), use of a child in a sexual performance (one count), sexual abuse in the first degree (four counts), attempted sexual abuse in the first degree (one count), and endangering the welfare of a child (two counts), in satisfaction of the three indictments filed against him.  (Petitioner's in-court admission on December 20, 1988, would not be the last time he would publicly confess his guilt of the charges.  After he was sentenced, petitioner agreed to be interviewed by Geraldo Rivera, and that interview was broadcast on Rivera's television program in February 1989.  Throughout the interview, petitioner solemnly told Rivera that he fondled children who were students in the computer classes run by his father, that he engaged in oral and anal sexual conduct with the children, and that videotapes and hundreds of photographs were taken of the children whom he and his accomplices abused.)

7.   On January 24, 1989, petitioner was sentenced by the County Court, Nassau County, to concurrent terms of imprisonment, the longest of which was six to eighteen years (Boklan, J., at plea and sentence).

8.    Petitioner did not perfect an appeal from the judgment. (Had petitioner perfected an appeal, the plea and sentence minutes would presumably have been transcribed shortly after the sentencing. It is no longer possible to obtain transcriptions of those proceedings because the stenographer who took the minutes has died, and his records cannot be located.)

9.    Petitioner was released from prison on December 7, 2001, and was subsequently classified a level III offender under the Sex Offender Registration Act (New York Correction Law article 6-C). Upon his release, petitioner was under the supervision of the New York State Division of Parole.  That period of supervision has been completed.

10.   According to petitioner's papers, on January 10, 2003, he viewed the movie Capturing the Friedmans (Friedman affidavit [annexed to the petition] at para. 56), and, according to petitioner, it was from that film that he first learned the factual basis of the claims that were the basis of a post-judgment motion he filed in the County Court, Nassau County, and the petition now filed with this Court.

11.   On January 7, 2004, almost fifteen years after he entered his guilty plea, and 362 days after he first viewed Capturing the Friedmans, petitioner filed a post-judgment motion pursuant to New York Criminal Procedure Law § 440.10(1)(h).   In that motion, petitioner alleged that he had been entitled to disclosure of certain

4

information pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), that the prosecution had failed to disclose the information to him prior to the entry of his guilty plea, and that this purported malfeasance by the prosecution required vacatur of his judgment of conviction. Specifically, petitioner claimed that police investigators used improper tactics when questioning potential witnesses in this case, that some complainants initially denied that they had been victims of abuse or that they had witnessed any criminal behavior, and that one particular complainant (identified as Gregory Doe) underwent hypnosis before claiming that he had been abused. Petitioner argued that he was unaware of this information when he pleaded guilty and that disclosure to him of this information would have led him to go to trial, rather than to take advantage of the negotiated plea agreement.

12. The People opposed vacatur of the judgment. Among other things, the Nassau County District Attorney (hereinafter "District Attorney") argued that it was demonstrably true that, at the time petitioner pleaded guilty, he was well-aware of the allegations concerning the questioning of the computer students and the contention that some students had denied any abuse. Concerning the allegation that Gregory Doe had been hypnotized, the People argued that petitioner failed to establish that Doe had been hypnotized (indeed, accompanying the People's papers was an affidavit from Doe's

5

psychologist, denying that she had ever used hypnosis when treating him), failed to establish that the People were aware of this hypnosis (if it ever occurred), and failed to establish that he would not have pleaded guilty had he known of the purported hypnosis of Doe.

13.   The District Attorney further argued that, pursuant to United States v. Ruiz, 536 U.S. 622 (2002), petitioner was entitled to no relief, regardless of the accuracy of his factual allegations.

14.   In a decision dated January 6, 2006, the County Court, Nassau County (LaPera, J.), relying on Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Ruiz, 536 U.S. 622, denied petitioner's motion to vacate the judgment of conviction.

15.   Petitioner sought permission to appeal to the Appellate Division from the County Court's order.  That application was denied on March 10, 2006.  He also filed an application for leave to appeal to the Court of Appeals.  That application was unauthorized by statute and, accordingly, was dismissed on May 24, 2006 (People v. Friedman, 6 N.Y.3d 894 [2006][Graffeo, J.]).

16.   In papers dated June 23, 2006, petitioner filed a petition for a federal writ of habeas corpus.  He sought relief on the ground that the prosecution failed to provide him with material to which he was entitled pursuant to Brady v. Maryland.

17.   On September 11, 2006, respondent moved to dismiss the petition as untimely.

18.  On July 20, 2007, this Court dismissed, as manifestly untimely, two of petitioner's distinct three <u>Brady</u> claims, leaving only the issue of whether the prosecution had withheld information concerning the purported hypnosis of one of the complainants.  The Court ordered "an oral argument and/or evidentiary hearing" as to "why due diligence would or would not have led to the discovery of the hypnosis," as well as the constitutional issue involved (<u>Friedman v. Rehal</u>, decision of July 20, 2007, at 14).

19.  Respondent opposes the granting of relief on petitioner's remaining claim on the grounds that:  1) the claim is time-barred, and 2) there is no legal basis for the relief requested.

20.  Provided as exhibits are copies of the following:

exh. 1    affidavit of Dr. Joyce Parks; and

exh. 2    affirmation of Assistant District Attorney
Joseph Onorato.

WHEREFORE, on the basis of this affidavit, the attached memorandum of law and exhibits, and the previously filed papers, the petition for a writ of habeas corpus should be dismissed without a hearing because it is time-barred or, alternatively, the petition should be denied without a hearing on the merits on the ground that,

7

even if defendant's allegations were all established to be true, he
would still be entitled to no relief.

_____
Judith R. Sternberg (JS 2644)
Assistant District Attorney
Nassau County District Attorney's Office
262 Old Country Road
Mineola, New York 11501
516-571-3271

Sworn to before me this
21st day of August, 2007

_____

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,

        Petitioner,

   -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the        06-CV-3136(JS)
New York State Division of Parole,

       Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

       Additional Respondent.

---------------------------------------X


RESPONDENTS' MEMORANDUM OF LAW

Introduction


On June 23, 2006, petitioner (hereinafter "defendant") filed an application for a writ of habeas corpus.  Defendant raised three distinct claims, two of which have already been dismissed by this Court on the ground that they were manifestly untimely.  Friedman v. Rehal, decision of July 20, 2007.  The Court specifically said that it could not "reach a decision based on the record before [it] as to the timeliness of Petitioner's third claim -- failure to disclose hypnosis of some of the child eyewitnesses," and an oral argument

2

and/or evidentiary hearing was ordered as to that issue (<u>Friedman v. Rehal</u>, decision of July 20, 2007, at 16).

A hearing on this matter is entirely unnecessary for two reasons. First, defendant's claim regarding the purported hypnosis of one of the complainants is time-barred irrespective of whether defendant learned of the purported hypnosis only when he saw <u>Capturing the Friedmans</u> on January 10, 2003. Second, the petition fails to state a basis for federal habeas relief, irrespective of the validity of the factual underpinning of defendant's claim, i.e., that one of the complainants was hypnotized before recalling any abuse, and that this information was never disclosed to defendant; the Supreme Court made clear in <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), that a defendant is not entitled to the disclosure of impeachment material -- like the "fact" here in issue -- prior to the entry of a guilty plea. Thus, because the facts adduced at a hearing could not affect the outcome, a hearing is unnecessary in this matter, and the petition should be either dismissed as untimely or denied on the merits.

3

<u>POINT I</u>

<u>THE PETITION IS UNTIMELY AND SHOULD BE DISMISSED</u>.

Defendant raised three claims in his application for a writ of habeas corpus.  This Court has already dismissed two of those claims, finding that they were barred by the statute of limitations.  The remaining contention involves an allegation that one of the numerous complainants against defendant remembered relevant facts only following hypnosis, and that that information should have been disclosed to defendant prior to the entry of his guilty plea.  According to defendant, he was unaware of this information prior to viewing a film entitled <u>Capturing the Friedmans</u>, which purported to chronicle the events surrounding the investigation, trial, and convictions of petitioner, his father, and an additional codefendant.  Defendant acknowledges viewing this film on January 10, 2003 (<u>see</u> petition for writ of habeas corpus, Friedman affidavit at para. 56; <u>Friedman v. Rehal</u>, decision of July 20, 2007 at 6).  Measured from this date, and in light of the chronology of the ensuing events in this matter (set out below), defendant's habeas corpus petition is manifestly untimely.


The Antiterrorism and Effective Death Penalty Act provides time limits within which a petition for habeas corpus must be filed.

4

Generally, a petition must be filed within one year of the date on which the judgment against the petitioner became final (28 U.S.C. § 2244[d][1][A])[1] or, as applicable to defendant's claim, one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" (28 U.S.C. § 2244[d][1][D]). Defendant's claim concerning the alleged hypnosis of Gregory Doe relies on statements made by Doe in an interview made for and recorded in Capturing the Friedmans, which defendant acknowledges viewing on January 10, 2003. Thus, it is that date, based on defendant's own submissions, when he became aware of the factual predicate of his claim, and the issue relevant to the timeliness of this petition is whether, in accord with the requirements of 28 U.S.C. § 2244(d)(1)(D), defendant filed his petition within one year of January 10, 2003.[2]  He did not.

---

[1]Defendant does not suggest, nor could he, that he filed his habeas petition within a year of the date on which his conviction became final.  Defendant pleaded guilty in December 1988, he was sentenced in January 1989, and, because he filed no direct appeal, his judgment of conviction was then final -- over eighteen years ago.

[2]As this Court discussed in its order dismissing two of defendant's claims, the AEDPA limitations period set out in § 2244(d)(1)(D) begins to run on the date on which a defendant is on notice of the facts supporting his claim, not the date on which he has gathered the evidence to support those facts (Friedman v. Rehal, decision of July 20, 2007, at 9-10).

5

Indeed, for almost a full year after January 10, 2003, defendant instituted no legal proceedings at all regarding his "new evidence" claim.  It was not until January 7, 2004, in the County Court, Nassau County, that defendant filed a post-judgment motion pursuant to New York Criminal Procedure Law (hereinafter C.P.L.) § 440.10(1)(h).  In other words, 362 days after viewing the film that he acknowledges provided him with the factual predicate of his claim, and with only three days remaining within the federal statute of limitations for filing a habeas petition, defendant filed his collateral motion to vacate judgment in state court.  Unquestionably, that motion served to toll the running of the statute of limitations, but only for the period during which his application for state collateral relief was pending (see 28 U.S.C. § 2244[d][2]).[3]


Defendant's post-judgment motion was denied by the County Court on January 6, 2006, and defendant thereafter sought permission to appeal to the Appellate Division, pursuant to C.P.L. § 450.15(1).  But, on March 10, 2006, his application for permission to appeal was denied, and, therefore, on that date, the statute of limitations

_____

[3]"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).

6

began to run anew.  And, as already noted, because defendant had already waited 362 days between discovering the factual predicate of his claim and filing his state post-judgment motion, only three days remained of the year within which he was required to file his petition for a writ of habeas corpus.  Defendant did not file within those three days.[4]  Rather, he waited to file his petition until June 23, 2006, more than three months after the expiration of the one-year period provided by the statute of limitations.  His petition must, therefore, be dismissed.

This conclusion is not undermined by the fact that, following the denial of his post-judgment motion, and following the Appellate Division's refusal of his application for leave to appeal, defendant sought permission to appeal to the Court of Appeals, which application was dismissed on May 24, 2006 (People v. Friedman, 6 N.Y.3d 894 [2006][Graffeo, J.]).  The period of time between March 10, 2006 (when the Appellate Division denied defendant's application for permission to appeal) and May 24, 2006 (when the Court of Appeals dismissed his application for permission to appeal) is not excludable from the one-year period within which defendant was required to file his petition.

---

[4]In other words, defendant was required to file his habeas petition no later than March 13, 2006.

7

There is no New York procedure allowing appeal to the Court of Appeals following the Appellate Division's denial of leave to appeal a decision on a post-judgment motion pursuant to C.P.L. article 440. See Hizbullahankhamon v. Walker, 225 F.3d 65, 70 (2d Cir. 2001). Defendant's application to the Court of Appeals was, therefore, unauthorized.   And, because that motion was unauthorized, the time during which it was pending did not toll the AEDPA statute of limitations.   See Evans v. Senkowski, 228 F.Supp.2d 254, 263-64 (E.D.N.Y. 2002).   In any event, even if that were not so, defendant's habeas filing would still be outside the statue of limitations.   That is because, even if defendant's time to file were deemed tolled during the pendency of his unauthorized leave application to the Court of Appeals, the statute of limitations would nonetheless have begun to run anew on May 24, 2006, when that application was dismissed.   At that point, as already noted, defendant had only three days remaining within which to file his habeas petition, and the petition was not filed within that three-day window, i.e., by May 27, 2006.   Rather, the petition was filed on June 23, 2006, weeks after the period of limitations would have expired.

Similarly, defendant can find no refuge in the ninety-day period during which he might have applied for certiorari to the Supreme Court from the Appellate Division's denial of his leave application.

8

In <u>Lawrence v. Florida</u>, 127 S.Ct. 1079 (2007), the Supreme Court clearly announced that an application for state post-judgment relief "is not . . . 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari." <u>Lawrence</u>, 127 S.Ct. at 1083. Obviously, if the statute is not tolled during the pendency of an application for certiorari, it is not tolled where -- as here -- a defendant does not even file a petition for certiorari. Thus, the statute of limitations continued to run as of March 10, 2006, when the Appellate Division denied defendant's application to appeal the denial of his post-judgment motion. At that point, defendant had only three days remaining of the one-year within which he could properly file his petition, and his June filing was clearly untimely.

By contrast, the ninety-day period during which a defendant may seek certiorari is relevant only when a defendant claims to have filed his petition for certiorari within one year of the date on which his judgment of conviction became final. <u>See</u> 28 U.S.C. § 2244(d)(1)(A); <u>Williams v. Artuz</u>, 237 F.3d 147, 151 (2d Cir. 2001); <u>Ross v. Artuz</u>, 150 F.3d 97, 98 (2d Cir. 1998). Obviously, and as already noted (<u>see</u> p. 4, <u>supra</u>), defendant can make no such claim here concerning his 1989 judgment of conviction; even granting

9

defendant a ninety-day period for seeking certiorari in connection
with his direct judgment appeal (which he never took), his conviction
became final many years ago, i.e., ninety days after he was sentenced
upon his plea of guilty.  Rather, defendant here claims only that he
is entitled to review of his newly-discovered-evidence claim pursuant
to 28 U.S.C. § 2244(d)(1)(D), which allows him a one-year period of
limitation from the date on which the factual predicate of his claim
could have been discovered through the exercise of due diligence.
As made clear by Lawrence, that one-year does not include any period
during which defendant could have sought certiorari from the denial
of his state post-judgment motion.

    In sum, defendant has not filed his petition within a year of
the date on which his judgment of conviction became final; he has not
filed within a year of the discovery of the factual basis of his
claim; and he is entitled to no relief.

    Finally, the Court should again reject, as it already has,
defendant's contention that the statute of limitation should be
calculated not from January 10, 2003, when he acknowledges that he
first saw Capturing the Friedmans, but from July 1, 2003, when, he
claims, he "began to gain access to the factual predicate" for his

10

petition (petition at para. 13).[5]  Defendant acknowledges that he saw
the film on January 10, 2003 (Friedman affidavit at para. 56), and
it is clear that his allegations concerning hypnosis originated from
the statements made by Gregory Doe during an interview conducted for,
and included in, the film.   Thus, it was on the day that defendant
viewed the movie that he discovered "the factual predicate of his
claim" (see 28 U.S.C. § 2244[d][1][D]).[6]  As this Court has already
recognized, defendant cannot  circumvent the statute of limitations
by claiming, as he does, that it was not until July 2003 (some six
months after defendant himself acknowledges that he was aware of his
claim) that the film's director "grant[ed him] access to the original
source material" (petition at para. 6).  In its decision of July 20,
2007, this Court wrote:  "A petitioner need not possess all the
evidence  supporting  the  habeas  petition;  rather,  the  factual
predicate exception expires and the limitation clock begins to tick
when a petitioner is 'on notice of the facts which would support a

_____

[5]The petition (para. 13) refers to July 2006 as the date on
which  defendant  claims  to  have  first  learned  of  the  factual
predicate for his claim.  I have confirmed with defendant's counsel
that this is a typographical error and should read "July 2003."

[6]In  its  decision  of  July  20,  2007,  this  Court  noted  that
defendant claimed to have viewed the film on January 10, 2003, and
that he further claimed it was then that he first learned of the
evidence that a complainant had been hypnotized (Friedman v. Rehal,
decision of July 20, 2007, at 5).

11

claim.'" <u>Friedman v. Rehal</u>, decision of July 20, 2007, at 9, citing <u>Hector v. Greiner</u>, No. 99-CV-7863, 2000 U.S. Dist. LEXIS 12679, at *3 (E.D.N.Y. Aug. 29, 2000).  <u>See Youngblood v. Greiner</u>, 1998 WL 720681 at *4 n.4 (S.D.N.Y. 1998)(the period of limitation established in 28 U.S.C. § 2244[d][1][D] "runs from the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim").  Thus, as this Court has already found, defendant was "on notice of the facts" on January 10, 2003, and it was on that date that the statute of limitations began to run.  It ran for 362 days thereafter, until defendant filed his post-judgment motion, and it resumed on March 10, 2006, when his post-judgment motion was no longer pending.  Three days later, on March 13, 2006, the statute of limitations expired.

The timeliness of defendant's petition is a pure question of math, and he is defeated by the numbers.  His petition, filed June 23, 2006, was untimely -- a conclusion that cannot be undone by a hearing on the factual allegations of his application.

12

<u>P O I N T   II</u>

<u>AS ESTABLISHED BY THE SUPREME COURT, IMPEACHMENT EVIDENCE NEED NOT BE DISCLOSED TO A DEFENDANT PRIOR TO HIS ENTRY OF A GUILTY PLEA; THE STATE COURT'S RULING WAS NOT CONTRARY TO, OR BASED ON AN UNREASONABLE APPLICATION OF, THIS CLEARLY ESTABLISHED FEDERAL LAW (answering defendant's memorandum of law, Point I[c]).</u>

Based on a commercial movie of dubious reliability,[7] defendant claims that one of the victims who testified against him in the grand jury remembered being abused by defendant only after hypnosis. Defendant further claims that, pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the prosecution was constitutionally obligated to inform him of this prior to the entry of his guilty plea, and that the failure to so inform him warrants the issuance of a writ of habeas corpus. Assuming -- but certainly not conceding -- that this hypnosis ever occurred,[8] defendant is still not entitled to the relief he seeks.

---

[7]A commercial film, containing snippets of interviews, cut and spliced and taken out of context, all unsworn, is reliable evidence of nothing.

[8]The psychiatrist who treated this complainant denies, in a sworn affidavit, that she ever hypnotized him (exh. 1). Additionally, the prosecutor assigned to the Friedman prosecution affirms that he "was never aware of any specific treatment or therapy (including hypnosis and visualization) used by any doctor in the treatment of any complainant in the instant case" (exh. 2).

13

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 permits a federal court to grant habeas corpus relief only if the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As construed by the Supreme Court, the "contrary to" and "unreasonable" clauses have independent meanings.

Under the "contrary to" clause, federal habeas relief may be granted only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000)(O'Connor, J., writing for the Court in Part II of her opinion).  Presumably, even defendant himself would concede that he cites no Supreme Court case that would entitle him to relief based upon this clause.

With regard to the "unreasonable application" inquiry, the Supreme Court has instructed that "a federal habeas court . . . should ask whether the state court's application of clearly

14

established federal law was objectively unreasonable." <u>Williams</u>, 120 S.Ct. at 1521; <u>see</u> <u>Jones v. Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000).  The state court here relied on <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), in determining defendant's claims concerning the disclosure of certain materials to an accused prior to the entry of a guilty plea. Accordingly, the state court invoked the correct legal principles at issue.   Defendant's  claim,  therefore,  is  governed  by  the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1).   <u>See</u> <u>Clark v. Stinson</u>, 214 F.3d 315, 322 (2d Cir. 2000)(where state court cited controlling Supreme Court case and thus "invoked the correct legal principle at issue," the matter fell within the "unreasonable application" prong of § 2254[d][1]).  It is clear from an examination of the state court's decision that it was not objectively unreasonable.


There is no general constitutional right to discovery in all criminal cases (<u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 [1977]), much less a right to discovery in cases that do not proceed to trial, and nothing in <u>Brady v. Maryland</u> holds to the contrary.  In its seminal <u>Brady</u> decision, the Supreme Court ruled that prosecutors have a  constitutional  obligation  not  to  suppress  evidence  that  is

15

favorable to defendants and material to the issue of guilt or
punishment.   But the Court has made equally clear that this
constitutional obligation is a product exclusively of the "fair
trial" guarantees inherent in the fifth, sixth, and fourteenth
amendments to the Constitution.  See United States v. Ruiz, 536 U.S.
622.  When a defendant opts to waive the right to trial, and pleads
guilty instead, the principles of Brady and its progeny are simply
not triggered -- at least in the case of impeachment evidence -- and
the prosecution has no obligation to disclose such evidence.  And a
defendant's lack of awareness of such evidence, when pleading guilty,
will not render the plea involuntary.  That is precisely the holding
of the Supreme Court in United States v. Ruiz.


At issue in Ruiz, as stated by the Supreme Court in the first
sentence of its opinion, was whether the Constitution obligates
"prosecutors, before entering into a binding plea agreement with a
criminal defendant, to disclose 'impeachment evidence relating to any
. . . witnesses.'"  The Court answered that issue unequivocally,
stating:  "We hold that the Constitution does not require that
disclosure."  United States v. Ruiz, 536 U.S. at 625.  In its
analysis, the Court surveyed its past Brady decisions, and noted that
those decisions uniformly recognized that the "right to receive from

16

prosecutors exculpatory impeachment material" is a part of the Constitution's basic "'fair trial' guarantee." United States v. Ruiz, 536 U.S. at 628, citing Brady v. Maryland, 373 U.S. at 87. Accordingly, as the Court concluded, it follows that a defendant who pleads guilty, and who thereby foregoes his right to a fair trial, also foregoes a fair trial's "accompanying constitutional guarantees," such as those provided by Brady and its progeny.  Id. at 628-29.[9]


In addition, the Ruiz court flatly rejected the notion that a guilty plea is not "'voluntary' (and that the defendant could not, by pleading guilty, waive [his] right to a fair trial) unless the prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the

_____

[9]The Court's holding in Ruiz is entirely consistent with its past pronouncements that there is no such thing as a harmless Brady violation, because no Brady violation occurs unless the defendant has been denied a fair trial.  Similarly, there is no obligation on the part of the prosecutor to disclose evidence unless its suppression would deprive a defendant of a fair trial.  See, e.g., Strickler v. Greene, 527 U.S. 263, 281-82 (1999)("there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict"; one of the components of a Brady violation is that "prejudice must have ensued"); United States v. Agurs, 427 U.S. 97, 108 (1976)("the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial").

17

defendant insisted upon a trial." Ruiz, 536 U.S. at 629.  As the
Court explained, "impeachment evidence is special in relation to the
fairness of a trial, not in respect to whether a plea is voluntary
('knowing,' 'intelligent,' and 'sufficient[ly] aware')."    Id.
(emphasis in original).  Thus, it is of no avail to a defendant to
claim that the decision to plead guilty would have been different had
the defendant been provided more information upon which to calculate
the risk of going to trial.  The Court ruled that "the Constitution,
in respect to a defendant's awareness of the relevant circumstances,
does not require complete knowledge of the relevant circumstances,
but permits a court to accept a guilty plea, with its accompanying
waiver of various constitutional rights, despite various forms of
misapprehension under which a defendant might labor."  Id. at 630,
citing, inter alia, Brady v. United States, 397 U.S. 742, 757
(1970)("A defendant is not entitled to withdraw his plea merely
because he discovers . . . that his calculus misapprehended the
quality of the State's case"); see also People v. Jones, 44 N.Y.2d
76, 81 (1978).


    Accordingly, because a defendant's guilty plea is not rendered
involuntary or defective by reason of his unawareness of potential
impeachment evidence concerning the People's witnesses -- even where

18

a defendant, upon learning of such evidence, would not have opted to plead guilty -- and because the constitutional obligation imposed on prosecutors to disclose so-called <u>Brady</u> material is grounded solely in safeguarding the right to a fair trial, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." <u>United States v. Ruiz</u>, 536 U.S. at 633.

In an attempt to avoid the obvious consequence of this holding, defendant argues that evidence of one complainant's hypnosis in this case was exculpatory (defendant's memorandum of law at 25), implying that <u>Ruiz</u>, which addresses only impeachment evidence, is, therefore, not controlling.   Defendant is wrong for two reasons.

First, evidence of the kind here in issue -- an allegation that only after being hypnotized did this complainant remember being victimized by defendant -- is clearly and solely impeachment material.[10]   It may provide a defendant with ammunition to establish that the witness's testimony is the product of suggestion rather than

---

[10]It is notable that neither Gregory Doe nor any of the other twelve complainants who would have testified against defendant (had he gone to trial) has ever recanted his allegations that defendant committed sodomy and other forms of sexual abuse against him.

19

memory.   It may even lead jurors to conclude that a witness's testimony is so tainted that it has no probative value whatsoever. But evidence that a complainant is unreliable is not the same as evidence that a defendant is innocent.   Such evidence may undermine, i.e., impeach, the witness's testimony; it would not, on its face, establish that the accused is not guilty.   And, indeed, this view is supported by the very cases upon which defendant relies.

In <u>United States v. Miller</u>, 411 F.2d 825 (2d Cir. 1969), and <u>Jean v. Rice</u>, 945 F.2d 82 (4th Cir. 1991), both relied upon by defendant, each Court addressed the prosecution's failure to disclose evidence that a testifying witness had been hypnotized.   In each case, the Court specifically referred to this as "impeaching" evidence.   <u>United States v. Miller</u>, 411 F.2d at 832; <u>Jean v. Rice</u>, 945 F.2d at 6.   <u>See also, e.g.</u>, <u>Doan v. Voorhies</u>, 2007 WL 894559 at *14 (S.D. Ohio 2007)(knowledge that witness had been hypnotized would have been of some help to defendant in attempting to impeach witness); <u>Davis v. Singletary</u>, 119 F.3d 1471, 1476-77 (11th Cir. 1997)(discussion, in the context of the effective assistance of counsel, of the possible impeachment of a witness's testimony by questioning concerning the prior hypnotizing of the witness). Moreover, the defendants in those cases went to trial -- unlike this

20

defendant.  Thus, relief was granted in <u>Miller</u> and <u>Jean</u> not because evidence of hypnosis is exculpatory material that must be disclosed to a defendant who pleads guilty (which defendant erroneously asserts), but because it is impeachment material that must be disclosed to a defendant who goes to trial (which is the law). Because the defendants in <u>Miller</u> and <u>Jean</u> exercised their rights to be tried, <u>Brady</u>, but not <u>Ruiz</u>, was applicable.  Because defendant here chose to plead guilty, <u>Ruiz</u> is clearly applicable.

Second, even if the evidence here in issue were exculpatory (which it is not), defendant would still be entitled to no relief. In <u>Ruiz</u>, the Supreme Court addressed the issue of whether a defendant is entitled to the disclosure of impeachment evidence prior to his entry of a guilty plea.  That decision left open the issue of whether a defendant is entitled to the disclosure of exculpatory evidence prior to the entry of a guilty plea, and the Supreme Court has not yet addressed that question.  Defendant would have this Court determine that issue.  It may not.  A determination of this issue would constitute the announcement of a new rule of law, which is precluded in the context of a habeas proceeding. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288 (1989); <u>accord</u>, <u>Abdul-Kabir v. Quarterman</u>, 127 S.Ct.

21

1654, 1671 (2007); see Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996).


In sum, the law and its application to this case are clear: after pleading guilty and choosing to forego a trial, a defendant will not later be heard to complain that he was denied access to alleged Brady material that would have been, at best, impeaching of a complainant's testimony, had defendant chosen to go to trial. That is the conclusion at which the state court arrived after correctly identifying the relevant principles of law, as established by the Supreme Court in Brady v. Maryland and United States v. Ruiz, and applying those principles to the facts of this matter. Absent a finding that the state court's decision was an "objectively unreasonable" application of the clearly established federal law, its decision may not now be disturbed. See Williams v. Taylor, 120 S.Ct. at 1521. See also Jones v. Stinson, 229 F.3d at 119, 121 (a habeas court's review is limited to whether the state court's ruling was objectively unreasonable, not whether it was correct). Clearly, this was not an objectively unreasonable application of Brady and Ruiz, and defendant is entitled to no relief in this forum, even assuming the truth of his factual allegations. The petition should, therefore, be denied without a hearing.

22

<u>C O N C L U S I O N</u>


_____THE PETITION FOR A WRIT OF HABEAS CORPUS SHOULD BE SUMMARILY
DISMISSED ON THE GROUND THAT IT IS UNTIMELY, OR, ALTERNATIVELY,
DENIED ON THE GROUND THAT DEFENDANT HAS FAILED TO ALLEGE FACTS THAT,
EVEN IF TRUE, ESTABLISH A VIOLATION OF HIS RIGHTS UNDER THE UNITED
STATES CONSTITUTION._____


Dated:     Mineola, New York
           August 21, 2007




                              Respectfully submitted,

                              Kathleen M. Rice
                              District Attorney, Nassau County
                              262 Old Country Road
                              Mineola, New York 11501


                         By: _____
                              Judith R. Sternberg (JS 2644)




Peter A. Weinstein
Judith R. Sternberg
     Assistant District Attorneys
          of Counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

JESSE FRIEDMAN,                          06 CV 3136(JS)

        Petitioner,

   -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

      Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

      Additional Respondent.

---------------------------------------X

## Certificate of Service

    I hereby certify that, on August 21 11, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon:


           Ronald Kuby, Esq.
           Attorney for Petitioner
           119 West 23rd Street, Suite 900
           New York, NY 1001


                      KATHLEEN M. RICE
                      District Attorney, Nassau County
                      Attorney for Respondents
                      262 Old Country Road
                      Mineola, New York 11501
                      (516) 571-3800


              By: Judith R. Sternberg (JS 2644)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

JESSE FRIEDMAN,                         06 CV 3136(JS)

                Petitioner,

    -against-

JOE REHAL, Parole Officer, and
ROBERT DENNISON, Chairman of the
New York State Division of Parole,

                Respondents, and

THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

                Additional Respondent.

----------------------------------------X

        **Notice Regarding the Filing of Exhibits in Paper Form**


        Exhibits in support of Respondent's Motion to Dismiss in
opposition to the above-captioned habeas corpus petition, which was
filed electronically on August 21, 2007, are being filed in hard
copy.

Dated:  Mineola, New York
        August 21, 2007

                         KATHLEEN M. RICE
                         District Attorney, Nassau County
                         Attorney for Respondents
                         262 Old Country Road
                         Mineola, New York 11501
                         (516) 571-3800

                      By: Judith R. Sternberg (JS 2644)